# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.C. ("Angela Brandywine") Toth,<br><br>           Plaintiff,<br><br>    v.<br><br>Schwarzenegger, et. al.,<br><br>           Defendants.<br>_____/ | CASE NO.   1:11-cv-247-MJS (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>(ECF No. 3) |

## I.  PROCEDURAL HISTORY

Plaintiff R.C. ("Angela Brandywine") Toth ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed this action on February 14, 2011. (Compl., ECF No. 1.) She[1] also filed a Motion for a Temporary Restraining Order and a Preliminary Injunction on the same day. (Mot., ECF No. 3.) The Court has not yet screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(A)(a), and no other parties have appeared in this action.

---

[1] Plaintiff identifies herself as a transgender inmate. She refers to herself using female pronouns. (Compl. at 6.) The Court will do likewise.

-1-

Currently before the Court is Plaintiff's Motion for a Temporary Restraining Order and for a Preliminary Injunction filed on February 14, 2011. (Mot., ECF No. 3.) Plaintiff is requesting a preliminary injunction and temporary restraining order "to ensure that she receives equal treatment." (Id. At 2.) Plaintiff seeks to require "all departmental employees to undergo sensitivity training and implement departmental regulations designed and calculated at providing LGBTQ[2] prisoners treatment and standards of living as is provided to heterosexual prisoners," among other requests. (Id.)

## II. ARGUMENT

In the Motion, Plaintiff states that she is a transgender prisoner currently housed at Pleasant Valley State Prison ("PVSP"). She has been subjected to abusive, homophobic, and discriminatory treatment from both staff and prisoners at PVSP as a result of their prejudices and biases against LGBTQ prisoners. Plaintiff has been assaulted by prisoners and battered and physically abused by staff because she is transgendered. She has been deprived of equal protection and treatment under the law because of her sexuality and sexual orientation. Plaintiff has been treated differently because she is a transsexual prisoner.[3]

Plaintiff asks the Court to require experts to meet with the California Department of Corrections ("CDCR"), the entity responsible for running PVSP, and have the CDCR adopt a certain standard of care for LGBTQ prisoners. Plaintiff's proposed standard of care is summarized, largely using her own words, as follows: 1) inmates should participate in

---

[2] LGBTQ refers to "Lesbian, Gay, Bisexual, Transgender, and Questioning."

[3] In her Motion, Plaintiff refers to a declaration with additional facts, but no declaration was attached to the Motion. (Mot at 2.)

-2-

mandatory tolerance and educational training, 2) CDCR should provide equal treatment and religious inclusion, 3) CDCR should document whenever a LGBTQ prisoner is victimized, 4) all CDCR institutions should enter into a contract to prosecute any inmate or staff who attacks and victimizes a LGBTQ inmate for a hate crime, 5) CDCR should acknowledge that LGBTQ inmates have a right to be treated equally, 6) CDCR should include gay hate crimes in the third disciplinary matrix within the California Code of Regulations title 15, 7) CDCR should acknowledge that LGBTQ inmates are taken into consideration for every new policy implemented, 8) all LGBTQ inmates should receive a copy of an orientation booklet that will outline and inform inmates of their rights and responsibilities, this book should be signed for by each inmate who receives it, and it should be updated annually, 9) CDCR should create a stronger presence of authority that will intervene when LGBTQ prisoners are harassed and CDCR should post notifications about sentences received by inmates convicted of LGBTQ hate crimes, 10) CDCR should house certain LGBTQ inmates with inmates who have similar sensibilities, 11) libraries run by the CDCR should have publications on current LGBTQ issues, 12) CDCR should implement policies that find and remove predators and keep a record in a central database of inmates known to prey on LGBTQ inmates, 13) CDCR should develop a curriculum for annually training staff on LGBTQ tolerance, staff should be taught to use the proper LGBTQ pronouns, and CDCR should keep a permanent record on staff found to be abusing LGBTQ inmates, 14) CDCR should implement polices to address homophobia and other issues, 15) CDCR should provide therapy for inmates with Gender Identity Disorder and for LGBTQ inmates, 16) CDCR should implement policies to provide representatives from each unit who will write daily logs, reports and monthly reports on LGBTQ issues, 17)

CDCR should keep statistical data on LGBTQ inmates, 18) CDCR should contact local LGBTQ community centers to help LGBTQ inmates with reentry, 19) CDCR should work to develop ties with local LGBTQ community centers, 20) appeals coordinators should be trained about the special needs of LGBTQ inmates and there should be a private interview with LGBTQ inmates who submit appeals, 21) CDCR should implement polices that forbid punishing a LGBTQ inmate who refuses to accept a cell mate or to be placed in a dangerous situation, 22) CDCR should make domestic partnerships as visible as heterosexual marriage, 23) CDCR should use proper pronouns when dealing with transgenders, provide hormone therapy, provide appropriate undergarments for transgendered inmates, among other policy changes, 24) CDCR should implement policies that protect LGBTQ inmates from being punished by changing their release date for non-disciplinary reasons or circumstances beyond their control, 25) CDCR should have zero tolerance for outing a prisoner, 26) CDCR should implement a contractual agreement for LGBTQ inmates at local county jails, 27) CDCR should implement a strict compliance for LGBTQ inmates once on parole, 28) CDCR should be prohibited from transferring or housing any LGBTQ inmate out of state if the state does not provide similar rights as provided to LGBTQ inmates in California, 29) CDCR should be prohibited from searching transgender inmates and prison queens in front of male inmates and any searches performed on transgendered inmates should be done with individuals who identify with that gender, 30) CDCR should implement an ombudsperson at each institution who identifies as LGBTQ themselves, and this individual should enforce compliance, act as an expert and advocate, among other things, and 31) these recommendations should be implemented within one year, and if they are not then the CDCR should report the name

of staff members who interfere with implementation to Plaintiff, the Court, and organizations.

### III. LEGAL STANDARDS

Plaintiff requests both a preliminary injunction and a temporary restraining order ("TRO") motion in her Motion. The standards, and the Court's analysis and conclusion, below, are effectively the same for both.

A TRO may be granted without written or oral notice to the adverse party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant's attorney certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. See Fed. R. Civ. P. 65(b). Otherwise the standards for a TRO are essentially the same as that for a preliminary injunction.

To be entitled to preliminary injunctive relief, a party must demonstrate "that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008)). The Ninth Circuit has also held that the "sliding scale" approach it applies to preliminary injunctions as it relates to the showing a plaintiff must make regarding her chances of success on the merits survives Winter and continues to be valid. Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1052-53 (9th Cir. 2010). Under this sliding scale, the elements

of the preliminary injunction test are balanced. As relates to the merits analysis, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits. Id.

Under the Prison Litigation Reform Act ("PLRA"), in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

## IV.   ANALYSIS

Plaintiff asks the Court to impose at this preliminary stage of the case a generalized standard of care and conditions of confinement for LGBTQ prisoners to include 31 specific reforms to the general prison system. Plaintiff claims that she meets all criteria necessary to be granted injunctive relief in that: 1) without the Court's help, Plaintiff will suffer irreparable harm due to CDCR's lack of policies to protect LGBTQ prisoners and CDCR's refusal to provide medical treatment for Plaintiff's transgenderism; 2) the balance of equities tip in her favor; 3) Plaintiff is likely to succeed on the merits; and 4) the relief sought will serve the public interest.

Plaintiff has failed to satisfy the legal prerequisites for injunctive relief. Plaintiff's requested relief extends far beyond solving inequities Plaintiff contends she faces in prison and well beyond the Court's authority. Turner v. Safley, 482 U.S. 78, 84 (1987) ("Prison administration is...a task that has been committed to the responsibility of...[the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint.") She has not shown what, if any, injury, loss, or damage she might suffer if

interim relief is denied. She does not advise of efforts, if any, she has made to give opposing parties notice of this Motion or why notice should be waived.

Plaintiff does allege that she will be irreparably harmed because of the CDCR's acts and deficient policies and because CDCR will not provide medical treatment for her transgenderism. However, she does little more than allege; she does not show that the perceived harm would be prevented if the relief she seeks were granted. She does not show that she needs immediate medical care or that her health will suffer if it is denied. Plaintiff also asks for general reforms in the prison system that would not impact her health directly. But even if Plaintiff had established that there is a possibility of irreparable harm, she does not satisfy the other prerequisites for injunctive relief.

Plaintiff states that the balance of hardships tips in her favor; she does not say, or even imply, how that might be so. Inasmuch as Plaintiff's injunction would effectively necessitate an immediate and total reform of the CDCR prison system, it certainly would impose a very substantial hardship on CDCR. Plaintiff does not show how any counterbalancing hardship on her from a denial of interim relief would be greater.

Plaintiff also states that she is likely to succeed on the merits. There is no basis upon which the Court can so conclude. The Court has not yet screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(a). The authorities cited by Plaintiff in support of her request for injunctive relief – cases dealing with excessive force, freedom of expression, and gender equality issues – do not even relate to the allegations in her Complaint.

It is possible that the relief Plaintiff seeks will serve the public interest; the protection of constitutional rights is a compelling public interest. See United States v. Raines, 362

-7-

U.S. 17, 27 (1960).  However, Plaintiff's requested relief goes beyond protecting Plaintiff's constitutional rights and extends beyond the Court's jurisdiction.  See Stormans, Inc., 586 F.3d at 1139 (Requested injunction would enjoin enforcement of regulations at issue beyond the plaintiffs themselves, and would reach non-parties and implicate issues of broader public concern.  Court ultimately denied preliminary injunction because it was overbroad.)

Indeed, Plaintiff's requested relief is also not allowed under the PLRA.  The PLRA requires that any prospective relief in civil actions related to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).  Pierce v. County of Orange, 526 F.3d 1190, 1203 (9th Cir. 2008) ("The PLRA both limits the prospective relief a court may order in [civil actions challenging prison conditions], and authorizes the termination of relief that does not fall within those limits.").  Plaintiff's proposed standard of care and conditions of confinement go far beyond correcting the potential harm that Plaintiff is individually facing, and instead goes to helping LGBTQ prisoners all across the California prison system.  Plaintiff's motion must therefore also be denied under the PLRA.

## V.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 3) is DENIED.

IT IS SO ORDERED.

Dated:   September 7, 2011          /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE