1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                     EASTERN DISTRICT OF CALIFORNIA

8
   R.C. ("ANGELA BRANDYWINE") TOTH,    CASE NO.    1:11-cv-247-MJS (PC)
9
                                       ORDER DISMISSING PLAINTIFF'S
10             Plaintiff,               AMENDED COMPLAINT, WITH LEAVE TO
                                       AMEND, FOR FAILURE TO STATE A CLAIM
11      v.
                                       (ECF No. 1)
12  GOVERNOR ARNOLD
    SCHWARZENEGGER, et. al.,            AMENDED   COMPLAINT   DUE   WITHIN
13                                      THIRTY DAYS
               Defendants.
14
   _____/
15

16

17
        Plaintiff R.C. ("Angela Brandywine") Toth ("Plaintiff") is a state prisoner proceeding
18
   pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.
19
   Plaintiff has consented to Magistrate Judge jurisdiction .  (ECF No. 8.)
20
        Plaintiff filed this action on February 14, 2011.  (Compl., ECF No. 1.)[1]  No other
21
   parties have appeared.  Plaintiff's Complaint is now before the Court for screening.
22
   I.    SCREENING REQUIREMENT
23
        The Court is required to screen complaints brought by prisoners seeking relief
24
   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.
25
   § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has
26

27  _____
        [1] Plaintiff identifies herself as a transgender inmate.  She refers to herself using female pronouns.
28  (Compl. at 6.)  The Court will do likewise.

                                       -1-

1  raised claims that are legally "frivolous or malicious," that fail to state a claim upon which

2  relief may be granted, or that seek monetary relief from a defendant who is immune from

3  such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion

4  thereof, that may have been paid, the court shall dismiss the case at any time if the court

5  determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

6  granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

7      A complaint must contain "a short and plain statement of the claim showing that the

8  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

9  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

10  mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129

11  S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127

12  S.Ct. 1955, 1964-65 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as

13  true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting

14  Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that

15  a defendant committed misconduct and, while factual allegations are accepted as true,

16  legal conclusions are not. Id. at 1949-50.

17      Cursory review of the Complaint satisfies the Court that it does not comply with the

18  pleading requirements in a way that would enable the Court to determine if it contains

19  hidden within it a cognizable cause of action.  Given the demands imposed on this Court

20  by the tremendous volume of these and voluminous other cases, it would not be practical

21  nor fair to other litigants for the Court to spend the time necessary to go through this

22  inordinately lengthy document to try to extract an identifiable, potentially cognizable claim,

23  identify the facts, if any, related thereto and determine which, if any, Defendant(s) could

24  possibly be held to answer.  Instead, based upon review and identification of the various

25  possible causes of action suggested, the Court will set out pleading standards applicable

26  to each.  Plaintiff will then be given the opportunity to re-plead in **"a short and plain**

27  **statement"** a claim which meets those standards.  Plaintiff will be required in that

28  amended complaint to assert only **related** claims against only those Defendants who may

1 credibly be alleged to be responsible for the facts giving rise to those claims.  Facts

2 unrelated to those claims will not be permitted.  Claims not related to the single set or

3 series of facts giving rise to those claims will not be permitted.  Further, this Court can

4 envision few claims which would need more than twenty pages to set them out. Thus, any

5 amended filing which is longer than twenty pages will be viewed with great skepticism and

6 may be rejected on that basis alone. Finally, any filing which does not comply with these

7 instructions directing a short and plain statement or any filing which combines unrelated

8 matters or defendants likely will result in **dismissal with prejudice of the entire action.**

9 **II.    42 U.S.C. § 1983 CLAIMS**

10        42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights,

11 privileges, or immunities secured by the Constitution and laws' of the United States."

12 Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  §

13 1983 is not itself a source of substantive rights, but merely provides a method for

14 vindicating federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94

15 (1989).

16        To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that

17 a right secured by the Constitution or laws of the United States was violated, and (2) that

18 the alleged violation was committed by a person acting under the color of state law.  See

19 West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245

20 (9th Cir. 1987).

21 **III.    SUMMARY OF COMPLAINT**

22        Plaintiff is a transgender prisoner who was housed at Pleasant Valley State Prison

23 ("PVSP") from March 8, 2007 to September 20, 2009.  (Compl at 6.)  Plaintiff claims the

24 following Defendants have injured her in some way: 1) Arnold Schwarzenegger, Governor,

25 2) Matthew L. Cate, Secretary of CDCR, 3) James Yates, Warden PVSP, 4) Felix Igbinosa,

26 Chief Medical Officer, 5) William F. Alverez, Health Care Manager at PVSP, 6) C. Hudson-

27 Huckabay, CCII/Appeals Coordinator at PVSP, 7) H. Martinez, CCII/Appeals Coordinator

28 at PVSP, 8) J.A. Herrera, CCII/Appeals Coordinator at PVSP, 9) G. Duran, CCII/Appeals

1   Coordinator at PVSP, 10) Unknown Contreras, Correctional Lieutenant as PVSP, 11) J.D.

2   Bennett, Correctional Lieutenant as PVSP, 12) L. Lubken, Correctional Lieutenant as

3   PVSP, 13) R. Corely, Correctional Lieutenant as PVSP, 14) Dr. Michael Mullan, Ph.D,

4   Psychologist PVSP, 15) Dr. G. Huffman, Ph.D, Psychologist PVSP, 16) Dr. C. Silverstein,

5   MD Senior Psychologist at PVSP, 17) Dr. Michael R. Martin, Ph.D, Psychologist PVSP, 18)

6   D. Huckabay, Correctional Sergeant at PVSP, 19) E. Navarro, Correctional Sergeant at

7   PVSP, 20) Unknown Cerda, Correctional Sergeant at PVSP, 21) A. Todd, Correctional

8   Sergeant at PVSP, 22) Unknown Hosman, Correctional Sergeant at PVSP, 23) B.

9   Martinez, Correctional Sergeant at PVSP, 24) Unknown Nevarez, Correctional Sergeant

10  at PVSP, 25) G. Estrada, Correctional Sergeant at PVSP, 26) N. Green, Correctional

11  Sergeant at PVSP, 27) K. Scott, Correctional Sergeant at PVSP, 28) R. Milam,

12  Correctional Sergeant at PVSP, 29) D. Thompson, Correctional Sergeant at PVSP, 30) B.

13  Diaz, Correctional Sergeant at PVSP, 31) P. Soares, Correctional Sergeant at PVSP, 32)

14  E. Wolford, Correctional Sergeant at PVSP, 33) M. Hernandez, Correctional Sergeant at

15  PVSP, 34) D.J. Hatten, Correctional Sergeant at PVSP, 35) R. Bridges, Correctional

16  Sergeant at PVSP, 36) M. Simas, Correctional Sergeant at PVSP, 37) T. Lee, Correctional

17  Sergeant at PVSP, 38) B. Gonzales, Correctional Sergeant at PVSP, 39) D. Criner,

18  Correctional Sergeant at PVSP, 40) E. Pruitt, Correctional Sergeant at PVSP, 41)

19  Unknown Griffin, Correctional Sergeant at PVSP, 42) W. Brumbaugh, Correctional

20  Sergeant at PVSP, 43) H. Hernandez, Correctional Sergeant at PVSP, 44) Unknown

21  Harper, Correctional Sergeant at PVSP, 45) Unknown Chastain, Correctional Sergeant at

22  PVSP, 46) N. Garza, Correctional Sergeant at PVSP, 47) A. Rangel, Correctional Sergeant

23  at PVSP, 48) Unknown Fregoso, Correctional Sergeant at PVSP, 49) Jenan, Correctional

24  Sergeant at PVSP, 50) J. Adame, Correctional Sergeant at PVSP, 51) S. Santiago,

25  Correctional Sergeant at PVSP, 52) J. Melendez, Correctional Sergeant at PVSP, 53) M.

26  Depner, Correctional Sergeant at PVSP, 54) J. Tinajero, Correctional Sergeant at PVSP,

27  55) D. Powell, Correctional Sergeant at PVSP, 56) Unknown Sturkey, Correctional

28  Sergeant at PVSP, 57) C. Saldana, LVN at PVSP, 58) S. Reyes, MSW at PVSP, 59-83)

1  Does 1 through 25, inclusive.

2          Plaintiff alleges as follows:

3          Plaintiff was housed at PVSP from March 8, 2007 to September 20, 2009.  (Compl.
4  at 7.)   During her time as PVSP she was subjected to a homophonic/transphobic
5  environment and an atmosphere unsympathetic to transgendered ("TG") and Lesbian, Gay,
6  Bisexual, Transgender and/or Questionable ("LGBTQ") prisoners.   (Id.)   She was
7  constantly faced with humiliation, unnecessary force, segregation placement, false reports,
8  seizures, loss of property, cell searches, and assaults by other inmates.  (Id.)  Plaintiff
9  incurred injuries as a result of this abuse.  (Id.)

10         From March 15, 2007 to September 20, 2009, when she was transferred out of
11 PVSP, Plaintiff interacted with Defendants Fregoso, Scott, Jenan, Adame, Santiago,
12 Melendez, Depner, Tinajero, Powell, Todd, B. Martinez, Pruitt, Gonzales, Brumbaugh,
13 Bennett, Lee, Griffin, Lubken, Green, Sturkey, Nevarez, Contreras, Cerda, Hosman,
14 Huffman, Mullan, Martin, Silverstein, and certain Does. (Compl. at 7.)  These Defendants
15 were directly and/or constructively placed on notice of the imminent harms Plaintiff faced
16 through her grievances, ignored them and allowed the abuses to continue.  (Id.)

17         At PVSP, Plaintiff was denied adequate medical care; placed in Administrative
18 Segregation ("Ad Seg") under severely restrictive conditions; and subjected to false Rules
19 Violation Reports ("RVRs"), unnecessary uses of force, abuses, and preventable attacks
20 by other prisoners, in retaliation for her efforts to file grievance reports.  (Compl. at 6-9.)
21 She filed grievances with Defendants Yates, Hudson-Huckabay, H. Martinez, Cerda, Todd,
22 Scott, Estrada, Bennett, Lubken, and certain Does.   (Id.)   Some grievances were
23 processed but many were not.  (Id.)  These Defendants took actions to retaliate against
24 Plaintiff for filing appeals.  (Id.)  They  were aware of her rapes, trauma, beatings, and
25 abuses by homophobic/transphobic officers and heterosexual inmates as well as the
26 mental and physical injuries that resulted from these abuses.  (Id. at 14-15.)

27         During her time at PVSP, Plaintiff informed Defendants Yates, Hudson-Huckabay,
28 H. Martinez, Herrera, Duran, Cate, Schwarzenegger, Saldana, Alvarez, Igbinosa, Reyes,

1 Silverstein, Mullan, Huffman, Martin, and certain Does about her severe medical and
2 psychological conditions, including Gender Identity Disorder/Gender Dysphoria ("GID/GD"),
3 Posttraumatic Stress Disorder ("PTSD"), Rape Trauma Syndrome ("RTS"), and Battered
4 Women's Syndrome ("BWS") and her need for treatment.  (Compl. at 14.)  PVSP did not
5 staff any personnel qualified to provide on-site TG therapy or support.  (Id. at 15.)  PVSP
6 did not train staff on how interact deal with LGBTQ prisoners.  (Id.)

7 　　　　On March 15, 2007, Plaintiff was housed with inmate Ruiz, a mentally unstable
8 prisoner, over her objections.  (Compl. at 20.)  Inmate Ruiz attacked her three days later
9 to prove that he was not a homosexual.  (Id.)  Plaintiff was removed from her cell in only
10 her underwear and shirt.  (Id. at 10, 20.)  Plaintiff told Defendant Estrada she could not live
11 with heterosexual inmates.  (Id. at 21.)  Plaintiff was told she would be placed in Ad Seg
12 if she refused to sign a document indicating that she could program with inmate Ruiz.  (Id.)
13 Plaintiff was issued a RVR for mutual combat and housed with another transphobic
14 prisoner.  (Id.)

15 　　　　Even though Plaintiff informed Defendants M. Hernandez and Huckabay of her
16 inability to live safely with heterosexual prisoners, on June 21, 2007 she was housed with
17 another heterosexual inmate.  (Compl. at 21.)  Defendant M. Hernandez incited the inmate
18 to assault Plaintiff by informing him about Plaintiff's commitment circumstances and by
19 promising to return the inmate's television and radio.  (Id.)  The inmate assaulted Plaintiff
20 and she informed the night watchman who refused to get involved.  (Id.)  Defendants Lee
21 and Green discovered the attack in the morning.  (Id. at 21-22.)  Plaintiff was unable to
22 place the inmate on her enemy list and charge him with battery because she was
23 threatened with Ad Seg placement.  (Id.)  In response to the attack, Defendants[2] housed
24 Plaintiff's attacker three cells away from Plaintiff, and refused to inspect her "slice" wounds.
25 (Id.)  She was forced to sign a "compatibility chrono."  (Id.)  Defendant Green only reported
26 some of the injures and parts of the incident.  (Id.)  Even though Plaintiff was injured and

27 _____

28 　　　　[2] Plaintiff does not specify which Defendants were responsible for this housing change.

1   nformed Defendants Huckabay, M. Hernandez, Green, Lee, and certain Does of the

2   escalating abuses and in-cell sexual pressuring, these Defendants refused to intervene.

3   (Id. at 21.)

4       On September 3, 2007, Defendant Corely advised her that if she stopped filing

5   grievances, she would be left alone.  (Compl. at 8.)

6       On October 6, 2007, shortly after Plaintiff said she would file a grievance report

7   against Defendants Simas and Lee for their sexually suggestive and discriminatory

8   practices, Defendants Garza, Rangel, and certain Does responded to Plaintiff after

9   activation of a personal alarm device. (Compl. at 10, 17.) Defendants Garza and Rangel

10  injured Plaintiff's shoulder, even though Plaintiff did not offer any resistance.  (Id. at 17.)

11  They struck and punched Plaintiff, and used hostile, sexually suggestive, and

12  discriminatory epithets against Plaintiff.  (Id.)  Plaintiff requested medical treatment from

13  Defendants Navarro, Garza, Rangel, and certain Does, all of whom denied her request.

14  (Id. at 10-11.)  Plaintiff was given a RVR and transferred to the Secure Housing Unity

15  ("SHU").  (Id. at 8.)

16      Around the same time, Plaintiff attempted to speak with Defendant Navarro, the on-

17  duty supervisor, regarding the suggestive and discriminatory practices of Defendants

18  Simas and Lee that occurred on October 6, 2007, and their efforts to tell others about

19  Plaintiff's commitment circumstances.  (Compl. at 7, 17.)  She was given a RVR for

20  threatening staff and placed in the SHU for 9 months, starting on November 15, 2007.  (Id.

21  at 7-8.)

22      On October 7, 2007, Plaintiff was placed in Ad Seg, where she remained until

23  December 27, 2007.[3]  (Compl. at 11.)  She was raped, beaten, and abused during this

24  time.  (Id. at 11.)  Defendants Pruitt, Scott, Gonzales, Melendez, Cerda, Bennett, Griffin,

25

26

27      [3] Plaintiff states above that she was placed in the SHU for nine months starting on November 15,
    2007.  She also states below that she was on Suicide Watch from October 17-22, 2007.  In the event that
28  Plaintiff files an amended complaint, she should clarify when she was placed in Ad Seg, the SHU, and
    Suicide Watch.

1  Brumbaugh, Hosman, Silverstein, Mullan, Martin, Hoffman, and certain Does refused to
2  provide medical treatment after Plaintiff was subjected to sexual and physical abuse by
3  other inmates between October 7, 2007 and December 27, 2007, and subjected to
4  physical abuse by Defendants Melendez and Williams. (Id. at 11.) Also during this time,
5  Defendants Pruitt, Melendez, Scott, Gonzales, Griffin, Brumbaugh, Bennett, and certain
6  Does ignored Plaintiff's concerns and she was forced to live with inmates whom
7  Defendants knew were a risk to Plaintiff's safety. (Id. at 22.) On October 16, 2007,
8  Defendant Gonzales moved Plaintiff in with another inmate. (Id.) This inmate punched
9  Plaintiff in the face the following day in the presence of Defendant Cerda. (Id.) While she
10 was in Ad Seg, she was also abused by Defendants Melendez and Gonzales. (Id.)
11 Defendants Pruitt, Scott, Gonzales, Melendez, Cerda, Bennett, Griffin, Brumbaugh,
12 Hosman, Silverstein, Mullan, Martin, "Hoffman," and certain Does refused to provide
13 medical care for Plaintiff despite their awareness of Plaintiff's injuries. (Id.)

14 Plaintiff was placed on Suicide Watch between October 17 and October 22, 2007,
15 to be removed from inmate Williams who punched Plaintiff in the face. (Compl. at 22.)
16 Defendant Cerda refused to intercede. (Id.) Between October 17 and November 19, 2007,
17 Defendants Hosman, Huffman, Mullan, Martin, and Silverstein learned that Plaintiff was
18 being sexually and physically abused and suffering from the effects of the abuse, as well
19 as RTS, PTSD, and/or BWS. (Id. at 11.) However, these Defendants failed to report
20 Plaintiff's injuries and ensure Plaintiff received medical care. (Id.)

21 Plaintiff was returned[4] on or about October 29, 2007, Defendant Pruitt placed her
22 in another cell with inmate McGee, despite Plaintiff's objections. (Compl. at 22.) The
23 inmate started to verbally, physically, and sexually abuse her immediately. (Id.) This
24 conduct continued until November 14, 2007, even though Plaintiff reported the abuse to
25 Defendant Pruitt and others. (Id.) Plaintiff reported the inmate's behavior to Defendant
26
27 _____

28     [4] It is unclear from where Plaintiff was returned. Plaintiff could have been returned from the SHU
   or Suicide Watch.

1   Martin who refused to act.  (Id. at 22-23.)  On November 15, 2007,[5] Plaintiff was again

2   placed on Suicide Watch.  (Id. at 22.)  On November 17, 2007, Plaintiff reported the abuse

3   she was facing to Defendants Hosman, Mullan, Martin, and Silverstein, but they refused

4   to report the claims.  (Id.)  Instead she was returned to the cell with the abusive inmate,

5   and continued to be mistreated for the next 9 days until she was moved on November 28,

6   2007.  (Id. at 22-23.)

7       On December 3, 2007, Defendant Scott was notified that Plaintiff was being sexually

8   abused but did not investigate.  (Compl. at 23.)  On December 4, 2007, Plaintiff was

9   housed with another inmate who sexually and physically abused her.  (Id.)

10      Plaintiff was sexually and physically abused by inmate Bradford from December 4-5,

11  2007.  (Compl. at 23.)  After the incident, Defendants Melendez and Gonzales rehoused

12  her.  (Id.)  Defendants Melendez and Gonzales damaged her personal television set in her

13  new cell and manhandled her during the move.  (Id.)  Upon arriving in the new cell,

14  Defendants Melendez and Gonzales pinned her to a wall and Defendant Melendez

15  punched her. (Id. at 18.)  From December 5-6, 2007, she informed people that she was

16  being raped and assaulted in Ad Seg and that staff was responsible.  (Id. at 23.)  This

17  information was delivered to the night watchmen in the D4 tower, and they failed to take

18  any action.  (Id.)

19      On January 8, 2008, Defendants Diaz, Hatten, Soares, and Wolford humiliated

20  Plaintiff in retaliation, searched her despite a previous injury, shouted insults at her, and

21  told her to stop reporting her abuses.  (Compl. at 8.)  Defendant Yates was informed of

22  these injuries, but did not intervene.[6]  (Id. at 30.)

23      Retaliation against Plaintiff intensified after Plaintiff filed Toth v. Schwarzenegger,

24

25

26

27  [5] As stated above, Plaintiff states that she was in both Ad Seg and the SHU during this time period.

28      [6] Plaintiff does not specify how exactly she notified Defendant Yates.

-9-

1    et. al. in Fresno County Superior Court on June 4, 2008.[7]  (Compl. at 8.)

2        As a result of Plaintiff's October 6, 2007, shoulder injury caused by Defendants

3    Garza and Rangel, Plaintiff required surgery.  (Compl. at 18.)

4        On December 8, 2008, while attending an Endocrinology Tele-Medicine

5    appointment at PVSP, Plaintiff said she would file a grievance report against Defendant

6    Bridges for his sexually suggestive and discriminatory comments.  (Compl. at 18.)  While

7    waiting for her appointment and in front of Defendants Harper, Chastain, Crier, and certain

8    Does, Defendant Bridges unlocked the holding tank where Plaintiff was waiting and

9    attacked her.  (Id. at 8, 18.)  Defendants Harper, Chastain, Criner, and certain Does could

10   have prevented the attack by refusing to give Defendant Bridges the key to the holding

11   tank.  (Id. at 18.)  Defendants Harper, Criner, Chastain, Saldana, H. Martinez, Yates,

12   Schwarzenegger and Cate were aware of the attack either through first-hand knowledge

13   or through Plaintiff's correspondence.  (Id.) Defendants failed to take corrective action.

14   (Id.)  Despite the injuries from this attack, Defendants Saldana, Harper, Chastain, Criner,

15   Bridges, and certain Does refused to provide medical treatment to Plaintiff.  (Id. at 11-12.)

16   Defendant Saldana stopped Plaintiff from informing an endocrinologist about her injuries.

17   (Id. at 12.)

18       On January 13, 2009, as a result of her June 8, 2008 court filing,[8] Defendants Milm

19   and Thompson seized Plaintiff's effects over her objections.  (Compl. at 8.)

20       Plaintiff informed Defendant Huckabay on April 5, 2009 that she would file a

21   grievance report as a result of his conduct and he gave her a RVR.  (Compl. at 8.)

22       On April 28, 2009, Plaintiff was attacked by inmate Ambalong.  (Compl. at 12.)  The

23   injuries she sustained left her unable to chew or breathe out of her nose.  (Id.)  Plaintiff only

24   received one dose of Tylenol as treatment.  (Id.)  Plaintiff was seen again on April 30,

25   _____

26       [7] Plaintiff does not say who intensified the retaliation against her or how it was intensified.

27       [8] Plaintiff is referring to the Toth v. Schwarzenegger, et. al. matter filed in Fresno County Superior

28   Court.

1  2009, when an x-ray of her nose was ordered but not taken.  (Id.)  Plaintiff was properly
2  diagnosed on May 8, 2009, when a CT scan showed that Plaintiff had a nasal injury.  (Id.)
3  Plaintiff did not receive any further treatment at this point, despite her excruciating pain,
4  inability to breathe, and inability to chew.   (Id.)   Plaintiff also reported the incident to
5  Defendants Sturkey, Nevarez, and Contreras but they refused to investigate the reports
6  and placed her in Ad Seg.  (Id. at 24.)

7      On August 21, 2009, Defendants Fregoso, Melendez, and Jenan attempted to incite
8  inmate Saxton to assault Plaintiff.  (Compl. at 24.)  When inmate Saxton was taken out of
9  their shared cell for psychiatric services, Plaintiff refused to let him return.   (Id.)
10 Defendants Jenan, Melendez, Adame, Santiago, Depner, and Tinajero tried to intimidate
11 Plaintiff into letting Saxton back into the cell, and she was threatened with a RVR if she did
12 not.  (Id.)  Plaintiff eventually let Saxton back into her cell, and she was assaulted by him
13 soon thereafter.  (Id.)  Defendants Fregoso, Adame, Jenan, Santiago, Melendez, Depner,
14 Tinajero, and certain Does were in a nearby lounge and ignored Plaintiff's screams.  (Id.)
15 Plaintiff informed Defendants Fregoso, Jenan, and Melendez of the resulting injuries and
16 told them that Saxton had made credible threats to her safety.  (Id.)  She even showed
17 these Defendants her resulting injuries.  (Id.)  These Defendants ignored these reports.
18 (Id. at 12, 24.)  Saxton was allowed to remain in Plaintiff's cell for another 7 days.  (Id. at
19 24.)   These abuses were condoned by Defendants Todd, B. Martinez, Lubken, and
20 Bennett.  (Id.)  On August 28, 2009, Plaintiff was assaulted again by inmate Saxton and
21 psychiatric staff witnessed the assault.  (Id.)  Prison staff was forced to respond, and
22 Plaintiff was placed in a single cell, until she left the Ad Seg unit on September 20, 2009,
23 to California State Prison Los Angeles, where she is currently housed.  (Id. at 24-25.)

24      In general, Plaintiff found that staff at California state prisons, including the mental,
25 medical, and custody staff, were not prepared to provide for LGBTQ issues.  (Compl. at
26 33.)  Due to these policies, Plaintiff was prevented from taking advantage of certain
27 opportunities.  (Id. at 34.)

28      Defendants Yates, Hudson-Huckabay, H. Martinez, Herrera, Duran, Cate,

-11-

1   Schwarzenegger, Rangel, Garza, Navarro, Melendez, Gonzales, Bridges, Harper,

2   Chastain, Criner, Saldan, Smith, Scott, Griffin, Brumbaugh, Bennett, and Does rejected

3   Plaintiff's grievance reports thereby ratifying prison policy.  (Compl. at 9.)

4          Defendants Schwarzenegger, Cate, Yates, Alvarez, Igbinosa, Hudson-Huckabay,

5   H. Martinez, Herrera, Duran, Contreras, Bennett, Lubken, Corley, Silverstein, Huckabay,

6   Navarro, Cerda, Todd, Hosman, B. Martinez, Navarez, Estrada, Green, Scott and certain

7   Does either explicitly or implicitly authorized and ratified each Defendant's conduct as

8   alleged in Plaintiff's Complaint.  (Compl. at 26-27.)  This was evidenced by interference

9   with prescribed medical care and indifference to serious medical conditions; repeated

10  judicial/civil collateral cases filed by inmates involving medical and mental health issues

11  at PVSP; repeated suits involving retaliation, false Ad Seg placements, appeal obstruction,

12  indifference to personal safety and medical conditions, discrimination against LGBTQ

13  prisoners and lack of proper supervision, training and discipline of PVSP personnel; failure

14  to educate and train officers, medical, and case worker staff; allowing staff to falsify CDCR

15  documents; failure to discover inmates and personnel prone to constitutional violations;

16  due process violations; retaliation; improper grievance rejections; failure to investigate

17  wrongdoings and violations of civil rights; Defendants' efforts to cover up and absolve

18  wrongdoing by PVSP personnel; failure to supervise, train, assign, and discipline PVSP

19  personnel; and failure to investigate sexual assaults on LGBTQ inmates.  (Id. at 27-29.)

20         PVSP encouraged misconduct by rewarding abusive behavior by rejecting inmates'

21  grievance reports.  (Comp. at 28.)  PVSP supervisory personnel, including Defendants

22  Schwarzenegger, Cate, Yates, Alvarez, Igbinosa, Hudson-Huckabay, H. Martinez, Herrera,

23  Duran, Contreras, Bennett, Lubken, Corley, Silverstein, Huckabay, Navarro, Cerda, Todd,

24  Hosman, B. Martinez, Nevarez, Estrada, Green, Scott and certain Does failed to train,

25  supervise, investigate, assign, and discipline their subordinates.  (Id.)  This failure has

26  resulted in Plaintiff's injuries.  (Id.)  These Defendants failed to control the behaviors of

27  their subordinate employees, which include Defendants Mullan, Huffman, Martin, Milam,

28  Thompson, Diaz, Soares, Wolford, M. Hernandez, Hatten, Simas, Lee, Gonzales, Criner,

1 Pruitt, Griffin, Brumbaugh, H. Hernandez, Harper, Chastain, Garza, Rangel, Bridges,

2 Fregoso, Jenan, Adame, Santiago, Melendez, Depner, Tinajero, Powell, Sturkey, Saldana,

3 Reyes, and certain Does.  Defendants Hudson-Huckabay, H. Martinez, Duran, Herrera,

4 and certain Does authorized an appeal rejection quota system.  (Id.)

5 **IV.    ANALYSIS**

6       **A.    Federal Rule of Civil Procedure 18(a)**

7       Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original

8 claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or

9 as alternate claims, as many claims, legal, equitable, or maritime, as the party has against

10 an opposing party." "Thus multiple claims against a single party are fine, but Claim A

11 against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

12 Unrelated claims against different defendants belong in different suits, not only to prevent

13 the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure

14 that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the

15 number of frivolous suits or appeals that any prisoner may file without prepayment of the

16 required fees. 28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

17       Plaintiff's Complaint contains a number of unrelated claims in violation of Rule 18.

18 The Court identifies at least thirteen distinct groupings of unrelated claims: (1) claims

19 related to failures to process Plaintiff's grievances and related retaliation incidents, (2)

20 claims related to failures to provide Plaintiff with sufficient treatment for psychological

21 conditions, (3) claims related to the March 15, 2007 incident involving Plaintiff's mentally

22 unstable inmate, (4) claims related to the June 1, 2007 incident with Plaintiff's cell-mate,

23 (5) claims related the October 6, 2007 incident involving Defendants Garza, Rangel, and

24 certain Does involving Plaintiff's grievances and a failure to provide adequate medical care,

25 (6) claims arising out of Plaintiff's Ad Seg placement from October 7, 2007 to December

26 27, 2007, (7) claims related to the January 8, 2008 retaliation incident, (8) claims related

27 to the December 8, 2008 incident involving Defendant Bridges and others, (9) claims

28 related to the January 13, 2009 retaliation incident, (10) claims related to the April 5, 2009

1  retaliation incident, (11) claims related to the August 28, 2009 attack on Plaintiff by another

2  inmate, (12) claims related to the August 21, 2009 incident where Defendants allegedly

3  incited an inmate to attack Plaintiff, and (13) claims related to the general lack of prison

4  policies to deal with LGBTQ inmates.

5      The Court will provide Plaintiff with the law applicable to the various types of claims

6  she might be attempting to assert so that she can evaluate which, if any ,she feels may be

7  and should be pursued here and which, if any, may be and should be pursued in different

8  actions.

9      Plaintiff must file a separate complaint for each unrelated claim against different

10 defendants at different facilities.  If she does not, all unrelated claims will be subject to

11 dismissal.

12     **B.    Doe Defendants**

13     Plaintiff lists as Defendants, Does 1 though 25.  "As a general rule, the use of 'John

14 Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th

15 Cir. 1980).  "It is permissible to use Doe defendant designations in a complaint to refer to

16 defendants whose names are unknown to plaintiff.  Although the use of Doe defendants

17 is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe

18 defendants creates its own problem: those persons cannot be served with process until

19 they are identified by their real names."  Robinett v. Correctional Training Facility, 2010 WL

20 2867696, *4 (N.D.Cal. July 20, 2010).

21     Plaintiff is advised that Does 1 through 25 cannot be served by the United States

22 Marshal until she has identified them as an actual individuals and amended her complaint

23 to substitute the Defendants' actual names.  The burden remains on Plaintiff to promptly

24 discover the full name of Does 1 through 25; the Court will not undertake to investigate the

25 names and identities of unnamed defendants.  Id.  The Court will grant Plaintiff leave to

26 amend her Complaint and attempt to set forth sufficient identification.

27     **C.    Possible Claims**

28         1.     First Amendment - Retaliation

1    "Within the prison context, a viable claim of First Amendment retaliation entails five

2    basic elements: (1) An assertion that a state actor took some adverse action against an

3    inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

4    the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

5    advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th

6    Cir. 2005).

7        The second element of a prisoner retaliation claim focuses on causation and motive.

8    See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his

9    protected conduct was a "'substantial' or 'motivating' factor behind the defendant's

10   conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

11   1989).  Although it can be difficult to establish the motive or intent of the defendant, a

12   plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.

13   2003) (finding that a prisoner established a triable issue of fact regarding prison officials'

14   retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines

15   v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th

16   Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

17   intent").

18       With respect to the third prong, filing a grievance is protected action under the First

19   Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  Pursuing

20   a civil rights legal action is also protected under the First Amendment. Rizzo v. Dawson,

21   778 F.2d 527, 532 (9th Cir. 1985).

22       With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

23   liability for a First Amendment violation merely because an unusually determined plaintiff

24   persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d

25   1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts

26   would chill or silence a person of ordinary firmness from future First Amendment activities.

27   Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

28       With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison

-15-

1  authorities' retaliatory action did not advance legitimate goals of the correctional institution

2  or was not tailored narrowly enough to achieve such goals."  Rizzo, 778 F.2d at 532.

3             2.     Eighth Amendment - Conditions of Confinement

4        The Eighth Amendment protects prisoners from inhumane methods of punishment

5  and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041,

6  1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison

7  officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

8  personal safety.  See Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986),

9  abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995); Hoptowit

10  v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming

11  from unsafe conditions of confinement, prison officials may be held liable only if they acted

12  with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d

13  1124, 1128 (9th Cir. 1998).

14        The deliberate indifference standard involves an objective and a subjective prong.

15  First, the alleged deprivation must be, in objective terms, "sufficiently serious...."  Farmer

16  v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991));

17  Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000).  A deprivation is sufficiently serious

18  when the prison official's act or omission results "in the denial of the minimal civilized

19  measure of life's necessities."  Farmer, 511 U .S. at 834 (quoting Rhodes v. Chapman, 452

20  U.S. 337, 347 (1981)).  Second, the plaintiff must make a subjective showing that the

21  prison official knew of and disregarded an excessive risk to an inmate's health or safety.

22  Id. at 837; Johnson, 217 F.3d at 734.  Delays in providing showers and medical attention

23  for inmates suffering from harmful effects of pepper spray may violate the Eighth

24  Amendment.  Clement v. Gomez, 298 F.3d 898, 905-06 (9th Cir. 2002).

25             3.     Eighth Amendment - Excessive Force

26        The analysis of an excessive force claim brought pursuant to Section 1983 begins

27  with "identifying the specific constitutional right allegedly infringed by the challenged

28  application of force."   Graham v. Connor, 490 U.S. 386, 394 (1989).  The Eighth

-16-

1  Amendment's prohibition on cruel and unusual punishment applies to incarcerated
2  individuals, such as the Plaintiff here.  Whitley v. Albers, 475 U.S. 312, 318 (1976).  To
3  state an Eighth Amendment claim, a plaintiff must allege that the use of force was
4  "unnecessary and wanton infliction of pain."  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir.
5  2001).    The malicious and sadistic use of force to cause harm always violates
6  contemporary standards of decency, regardless of whether or not significant injury is
7  evident. Hudson v. McMillian, 503 U.S. 1, 9 (1992); see also Oliver v. Keller, 289 F.3d 623,
8  628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis
9  uses of force, not de minimis injuries).  However, not "every malevolent touch by a prison
10 guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.   "The Eighth
11 Amendment's prohibition of cruel and unusual punishments necessarily excludes from
12 constitutional recognition de minimis uses of physical force, provided that the use of force
13 is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations
14 marks and citations omitted).

15      Whether force used by prison officials was excessive is determined by inquiring if
16 the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously
17 and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.  The Court must look at the
18 need for application of force; the relationship between that need and the amount of force
19 applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and
20 inmates as reasonably perceived by prison officials; and any efforts made to temper the
21 severity of the response.  See Whitley, 475 U.S. at 321.  The absence of significant injury
22 alone is not dispositive of a claim of excessive force.  See Wilkens v. Gaddy, ___ U.S. ___,
23 ___, 130 S. Ct. 1175, 1176-77 (2010).

24      4.      Eighth Amendment - Inadequate Medical Care

25      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an
26 inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439
27 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285
28 (1976)).  The two part test for deliberate indifference requires Plaintiff to show (1) "'a

1   serious medical need' by demonstrating that 'failure to treat a prisoner's condition could
2   result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2)
3   "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096
4   (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other
5   grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)
6   (internal quotations omitted)).

7       To show deliberate indifference, Plaintiff must show "a purposeful act or failure to
8   respond to a prisoner's pain or possible medical need, and harm caused by the
9   indifference." Id. (citing McGuckin, 974 F.2d at 1060).  "Deliberate indifference is a high
10  legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this
11  standard, the prison official must not only 'be aware of the facts from which the inference
12  could be drawn that a substantial risk of serious harm exists,' but that person 'must also
13  draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct.
14  1970 (1994)).  "'If a prison official should have been aware of the risk, but was not, then
15  the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id.
16  (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

17          5.      Eighth Amendment - Failure to Protect

18      The Eighth Amendment protects prisoners from inhumane methods of punishment
19  and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041,
20  1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison
21  officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and
22  personal safety. See Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986),
23  abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); Hoptowit
24  v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming
25  from unsafe conditions of confinement, prison officials may be held liable only if they acted
26  with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d
27  1124, 1128 (9th Cir. 1998).

28      The deliberate indifference standard involves an objective and a subjective prong.

First, the alleged deprivation must be, in objective terms, "sufficiently serious ...." <u>Farmer</u> <u>v. Brennan</u>, 511 U.S. 825, 834 (1994) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)); <u>Johnson v. Lewis</u>, 217 F.3d 726, 734 (9th Cir. 2000).  A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).  Second, the plaintiff must make a subjective showing that the prison official knew of and disregarded an excessive risk to an inmate's health or safety. <u>Id.</u> at 837; <u>Johnson</u>, 217 F.3d at 734.

### 6.    Fourteenth Amendment - Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established in two ways.  The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race, religion, or alienage.  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).  To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  Village of Willowbrook, 528 U.S. at 564.

### 7.    Supervisory Liability

1    The Supreme Court emphasized that the term "supervisory liability," loosely and
2    commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S. Ct. at 1949.
3    "Government officials may not be held liable for the unconstitutional conduct of their
4    subordinates under a theory of respondeat superior." Id. at 1948.   Rather, each
5    government official, regardless of his or her title, is only liable for his or her own
6    misconduct.

7    When the named defendant holds a supervisory position, the causal link between
8    the defendant and the claimed constitutional violation must be specifically alleged. See
9    Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441
10   (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff
11   must allege some facts indicating that the defendant either: personally participated in the
12   alleged deprivation of constitutional rights; knew of the violations and failed to act to
13   prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself
14   is a repudiation of constitutional rights' and is 'the moving force of the constitutional
15   violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted);
16   Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

17              8.    Gender-Motivated Violence Act

18   Lastly, Plaintiff alleges a violation of the Gender-Motivated Violence Act, 42 U.S.C.
19   § 13981. This is not a cognizable claim because that section was invalidated in United
20   States v. Morrison, 529 U.S. 598 (2000).

21   **V.    CONCLUSION AND ORDER**

22   As an initial matter, the Court finds that Plaintiff's Complaint does not meet the Fed.
23   R. Civ. P. 8(a)(2) requirement that it contain "a short and plain statement of the claim
24   showing that the pleader is entitled to relief."

25   Accordingly, it is HEREBY ORDERED that:

26   1.    Plaintiff's Complaint is dismissed;

27   2.    Plaintiff is granted **thirty (30) days** from the date of service of this order to
28         file an amended complaint that should be no longer than **twenty (20) pages**

-20-

in length and **shall not combine unrelated facts or Defendants**; the amended complaint must comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint"; failure to file an amended complaint in accordance with this order will result in dismissal of this action without prejudice; and

3.     If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:     August 30, 2012                          /s/ *Michael J. Seng*
                                                UNITED STATES MAGISTRATE JUDGE

-21-